Date signed November 28, 2007



_____
DUNCAN W. KEIR
U. S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | | |
|---|---|---|---|
| In Re: | * | | |
| JESSIE WILLARD BELLAMY, JR. | * | Case No. | 07-11332DK |
| | * | Chapter | 13 |
| | * | | |
| | * | | |
| Debtor | * | | |

## MEMORANDUM OF DECISION

Before the court is a dispute as to whether the unpaid balance of attorneys' fees should be distributed under the confirmed plan in this case before any distribution is made to creditors other than holders of claims for domestic support obligations as described under 11 U.S.C. § 507(a)(1),[1] and administrative expenses of the Chapter 13 Trustee (hereafter referred to as "Trustee").

This case was commenced by the filing of a voluntary petition under Chapter 13 on February 12, 2007. As required by Federal Rule of Bankruptcy Procedure 2016(b),[2] the petition was accompanied by the filing of a disclosure of compensation of attorney for debtor signed by Jeffrey M. Sirody for the firm of Sirody, Freiman & Feldman, P.C. (hereafter referred to as "Counsel"). That document disclosed that the debtor and Counsel had agreed to a fixed attorney fee

---

[1] Hereafter, all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code.

[2] Hereafter, all references to Rules are to the Federal Rules of Bankruptcy Procedure unless otherwise noted.

in the amount of $4,500.00 for legal representation by Counsel of the debtor in this case. The disclosure further provides that prior to the filing of the petition, Counsel received an initial payment of $2,500.00 and there is a remaining balance due of $2,000.00. Finally, the disclosure indicates that Counsel agreed to represent the debtor for the duration of the bankruptcy proceeding and waived the right to withdraw appearance until the case is closed or dismissed. The only matters for which Counsel may charge an additional fee are representation of the debtor in adversary proceedings.[3]

With the petition and the disclosure of compensation, debtor filed a proposed Chapter 13 plan. Objections to confirmation subsequently were filed by creditor Real-Time Resolutions, Inc., creditor America's Servicing Company, and by the Trustee. Creditor America's Servicing Company then withdrew its objection to confirmation before the court's ruling upon the initial plan. For the reasons set forth at a hearing held on May 22, 2007, the court denied confirmation of the initial proposed plan, with leave to amend.

On June 21, 2007, debtor filed a proposed amended Chapter 13 Plan (the "Plan"). The Plan proposed that the debtor pay unto the Trustee four monthly payments at the rate of $830.00 per month.[4] Thereafter 56 payments would be made at the level of $1,010.00 per month. Using the

---

[3] Adversary proceedings are separate federal lawsuits as required under Federal Rule of Bankruptcy Procedure 7001. None have been filed to this case.

[4] These first four monthly payments described in the Plan were retroactive in that plan payments first became due March 14, 2007, 30 days from the filing of the petition. 11 U.S.C. § 1326(a)(1). The initial proposed plan filed on February 23, 2007 proposed 36 monthly payments of $830.00 per payment. At the continued hearing held upon the initial plan on May 22, 2007, Counsel conceded that the amount proposed to be paid by the debtor to the Trustee under the plan would be insufficient to make the distributions necessary under the plan including specifically curing a pre-petition arrearage to secured creditor, Real-Time Resolutions, Inc.

language of the model plan referred to in Local Bankruptcy Rule 3015-1(a)[5] and attached to the

Local Rules as Local Bankruptcy Form M, from the payments received the Trustee was instructed

to make disbursements described, *inter alia*, as follows:

> a. Allowed unsecured claims for domestic support obligations and Trustee's commissions.
> b. Administrative claims under 11 U.S.C. § 507(a)(2), including attorney's fee balance of $2,000.00
> (unless allowed for a different amount upon prior or subsequent objection).
> c. Claims payable under 11 U.S.C. § 1326(b)(3). Specify the monthly payment: $0.00.
> d. Other priority claims defined by 11 U.S.C. § 507(a)(3) - (10). The Debtor anticipates the following claims: . . . IRS-United State Treasury (sic) 1,010.00

*Debtor's Amended Plan*, filed June 21, 2007, at p.1, para 2.

Thereafter under paragraph 2.e of the Plan, the Trustee is instructed to distribute funds to

creditor Real Time Resolutions, Inc. to cure an arrearage anticipated in the amount of $36,713.10

and to pay in full three secured claims held by the City of Baltimore. Under paragraph 2.f, the

Trustee is to distribute remaining funds pro rata to unsecured creditors.

Creditor Real-Time Resolutions, Inc. withdrew its objection to confirmation. However, the

Trustee filed a further objection as to the Plan asserting that the debtor had failed to provide

necessary documentation and information to the Trustee, was not current on the proposed plan

payments as required, and "[t]he plan fails to comply with the terms of the new Appendix F

regarding payment of attorneys' fees." *Objection to Confirmation of Plan,* filed by Ellen W. Cosby,

on July 17, 2007, at p.1.

On August 2, 2007, Counsel filed a Motion for Authorization for Interim Allowance for

Payment of Fees of Counsel to Debtor ( hereafter "Motion for Interim Allowance") that requested

court approval of the fixed fee of $4,500.00 and an authorization and direction that the Chapter 13

---

[5] Hereafter references to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland shall be referred to as "Local Rule."

3

Trustee pay the expense (presumably the remaining $2,000.00) as an administrative claim. Attached to the Motion for Interim Allowance is a chronological list of dates, brief description of services rendered, and initials of the providing professional and amount of time spent. In the Motion for Interim Allowance itself, it is stated that a total of 20.2 hours had been spent as of August 2, 2007 on this case of which 3.7 hours was by a partner, 12.6 hours by an associate, and 3.9 hours by support staff. The respective hourly rates listed for each of these is $300.00 for partner, $250.00 for associate, and $150.00 per hour for support staff. The Motion for Interim Allowance accordingly asserts that the firm had expended $4,845.00 in attorneys' fees in prosecution of the case and further avers: "In counsel's experience, additional hours over the remaining (3) years in the life of the plan will likely match, or even exceed, the time spent working on the case pre-confirmation." *Motion for Interim Allowance*, at p.2.

Subsequently, the court continued the Plan confirmation several times and set a hearing upon the Motion for Interim Allowance and Trustee's objection thereto to be held concurrent with the continued hearing on confirmation on September 11, 2007. On September 10, 2007, Counsel filed an amended application for payment of Counsel fees ("Amended Motion"). The Amended Motion set forth in greater detail the time and hourly rates of professionals employed upon the case through August 2, 2007 and requested that the court approve a fee in the amount of $4,485.00 (as opposed to $4,500.00 in the original Motion for Interim Allowance). However, the proposed Order attached to the Amended Motion still recited that Counsel fee be allowed in the amount of $4,500.00.[6]

At the hearing held on September 11, 2007, Counsel clarified that the total fee being sought

---

[6] The Plan was not amended further and would pay Counsel a total of $4,500.00, $2,500.00 of which was received pre-petition and $2,000.00 of which would be paid by distributions pursuant to the Plan.

by Counsel for all work on the case through its conclusion in the future, was a flat aggregate amount of $4,500.00 of which $2,000.00 remains as a balance unpaid.  Counsel explained that the exhibit attached to the Amended Motion and the hourly time and rate set forth therein were to demonstrate the value of services rendered to date and thus support the asserted reasonableness of the amount of the fee.

The attorney for the Trustee in oral argument clarified that the Trustee's objection to the Amended Motion was not as to the reasonableness of a flat fee at the level of $4,500.00 for representation of the debtor in all aspects of the Chapter 13 case (excluding adversary proceedings) from the institution of the case through its conclusion in the future.  Rather, the Trustee's objection was to a term in the Plan as to the disbursement of the unpaid balance of the fee.  Specifically, the Trustee interpreted the model plan language used in the Plan as mandating that the Trustee must pay in full, the claims described in each subpart of paragraph 2 in descending order.  For example, under this interpretation, after payment of any domestic support claims (no domestic support claims have been filed), all administrative expenses would be disbursed in full before any disbursement as to other priority claims, secured claims, and unsecured non-priority claims.  Counsel acknowledged that the Plan intended the result to which the Trustee was objecting as to the order of disbursement.

The Trustee's counsel asserted that his argument was based on Appendix F to Local Rule 9016-1,  and specifically paragraph 4.D. of that Appendix.  Appendix F first became part of the Local Rules of this court effective May 1, 2007 when the Local Rules were substantially revised. The May 1, 2007 Appendix F required that the remaining balance of a presumptively reasonable fee must be distributed to counsel pro rata during the post petition months of the confirmed plan.

In response to a request by the Bar Group, Local Rule 9016-1 was amended effective July 27, 2007, to accelerate the payment of counsel fees by adopting language proposed by the Bar

5

Group.  The revisions also clarified the disclosures required by Appendix F.[7]  Paragraph 4 of

Appendix F as amended effective July 27, 2007, provides:

> 4. The following fee arrangements are presumed reasonable under Section 329 and allowable under Section 330 and require no application or approval, except as stated below.  This presumption is rebuttable and the fee can be the subject of an order to justify the fee.
>
> If no objection or order to justify fee is filed or entered, the presumptively reasonable fee is deemed allowed under 11 U.S.C. § 330 without the entry of an Order.  However, if an objection or order to justify fee is filed or entered, the burden shall be upon debtor's counsel to prove that the fee should be allowed under 11 U.S.C. § 330 under the facts and circumstances of the case for which the fee is sought.  The foregoing notwithstanding, any objection filed by a trustee or other party in interest shall describe the asserted factual basis for rebutting the presumption.
>
> A.  A flat fee, not to exceed $3,500.00 for representation of the debtor for all matters in the main case.  Counsel may by application request approval of additional fees for work done after 6 months following the entry of the order confirming plan until representation ends.  Such application may be made on Local Form E with notice (Local Form E-1).
>
> B.  A flat fee, not to exceed $4,500.00 for representation for all matters in the main case.  Counsel waives all opportunity to apply for additional work in the main case.
>
> C.  A flat fee, not to exceed $2,000.00 for representation of the debtor on all matters relating to plan confirmation.  Counsel may apply for additional compensation for additional fees for prosecuting or defending motions not relating to the plan confirmation or for claims objections.  Such application may be made on Local Form E with notice (Local Form E-1).  The requirement of representation in

---

[7]  Unfortunately, through a scrivener's error the revised Appendix F as published inadvertently contained a sentence in paragraph 4.D. that had been replaced by new language.  This published edition contained both the new and old language, even though they were in conflict.  It was this flawed edition of Appendix F which the court had before it at the hearing on September 11, 2007, and to which the argument on that date seemingly referred.  Upon the subsequent discovery of the publishing error, Appendix F has been corrected on the website and otherwise in publications of the Local Rules.  Subsequently on October 15, 2007, by Administrative Order 07-02, further revisions to Local Rules were approved by the court but no further changes to Appendix F were made by those revisions.  The extraneous unauthorized sentence that was carried over from the May 1, 2007 edition of Appendix F was: "any remaining unpaid balance of the fee shall be amortized over the remaining months of the plan."

all matters in the bankruptcy case, stated in paragraph 2. above, applies without regard to the more limited coverage of the $2,000.00 fee arrangements set forth in this subparagraph.

**D. In any fee arrangement described in subparagraphs A, B and C above, the plan may allow up to a total of $2,000.00 (minus any deposit or retainer received) to be disbursed by the Trustee to counsel, before any disbursement by the Trustee to other creditors, except claimants whose claims are described in 11 U.S.C. § 507(a)(1). Unless otherwise provided by the confirmed Plan, any remaining unpaid balance of the fee shall be paid in a monthly amount not greater than the lesser of: (a) $125.00 or (b) 90% of the monthly Plan payment in the confirmed Plan.**

Appendix F to the Local Bankruptcy Rules, July 27, 2007, para 4.A.-D.(emphasis added).

The Trustee's objection as stated was that the Plan would require that the Trustee distribute the unpaid balance of Counsel's fee more quickly than as provided for under the quoted subparagraph 4.D. of Appendix F.

Upon further colloquy with the court at the hearing on September 11, 2007, counsel for the Trustee agreed that the argument raised by the Trustee was to the Plan provision which set forth the accelerated distribution of Counsel's fee. For that reason, the court ruled that the amount of the fee would be approved as being reasonable under Section 329 but that the question of the distribution would be considered as part of the confirmation hearing on the Plan.

Thereafter, turning to the issues of confirmation, Trustee's counsel informed the court that the only remaining objection that the Trustee had to confirmation was the accelerated distribution of Counsel's fee. In support of this argument the Trustee again made reference to Appendix F of the Local Rules. In response, Counsel argued that the Bankruptcy Code required that all allowed administrative expenses be distributed by the Trustee under a confirmed Chapter 13 plan prior to payments being made on any other claims. Both Counsel and Trustee's counsel requested an opportunity to file written points and authorities upon this issue. However, both parties also agreed that the Plan should be confirmed with a reservation of distribution of the balance of Counsel's fee

7

pending the Court's ruling upon this remaining issue.  An Order Confirming Plan, containing those terms, was entered October 1, 2007.

The court finds that a recitation of the history of Appendix F may be useful in explaining the court's ruling.  Prior to the revised Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland effective May 1, 2007, Local Rule 9010-6 and Appendix F referred to by that rule, did not exist.  Instead, Local Rule 9010-5(d) stated:

> RULE 9010-5 ATTORNEYS FOR DEBTORS - DUTIES
> (d) In a case under Chapter 12 or 13, representation will continue for the earlier of ten (10) days after the entry of an order of dismissal of the case or ninety (90) days after the entry of an order confirming the debtor's plan. . . .

Local Rule 9010-5(d).

In a large percentage of the Chapter 13 cases filed in this district, the fee arrangement by and between the debtor and debtor's counsel was a "flat fee" of a fixed amount, of which part was received prior to the filing of the petition and the remaining balance was to be paid by distributions under the plan.  This flat fee generally was only for services by counsel for the filing of the petition and related documents, advising the debtor as to confirmation matters, attending the Section 341 Meeting, and the confirmation hearing.  The fee arrangement, as disclosed in the fee disclosure required by Rule 2016(b), did not cover representation of the debtor in contested matters, such as defenses to motions for relief from stay and motions to dismiss and bringing objections to claims, as well as adversary proceedings.  The average flat fee for the representation for matters central to confirmation was approximately $1,200.00 and did not generally exceed $1,500.00.

Often, when the debtor was faced with a contested matter[8] such as a motion for relief from stay, counsel would charge the debtor an additional fee for representation in defending against the motion which additional charge was to be paid by the debtor and not through the plan.  Too often,

---

[8] Contested matters are brought by a motion filed in the bankruptcy case.  *See* Rule 9014.

some counsel misinterpreted their obligations to represent the debtor in these contested matters and at times demanded payment of additional fees from the debtor as a  prerequisite to the representation.  In addition, as then Local Rule 9010-5(d) permitted, counsel would frequently withdraw their appearance from the case immediately following 90 days after the entry of an Order confirming the debtor's plan.

This arrangement of representation too frequently left the debtor without effective counsel at a time when the debtor most needed legal services.  In 2004, an *ad hoc* delegation principally made up of members of the Consumer Bankruptcy Section of the Maryland State Bar Association and the Bankruptcy Bar Association of Maryland, along with representatives of the standing Chapter 13 Trustees and the Office of the United States Trustee, (collectively referred to herein as the "Bar Group") began a dialogue with the bench as to improvements in the providing of legal services to Chapter 13 debtors.  The Bar Group discussed concepts including legal representation for the debtor during the entire life of a Chapter 13 case encompassing contested matters in addition to matters central to confirmation.[9]  It was recognized in these discussions that the level of flat fee that would be appropriate compensation for such representation should exceed that which customarily  had been charged in this district for more limited representation.  Proposals were put forth by the Bar Group for an outline of the responsibilities of counsel, streamlined forms to deal with fee applications, and local rules that would in effect pre-approve a level of flat fee for the services to be rendered.

While this dialogue was ongoing, in April of 2005 Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), which with limited exceptions was to become effective to cases filed on or after October 17, 2005.  It was immediately recognized that

---

[9]  The concept discussed continued to treat adversary proceedings as separate actions not to be covered by a flat fee.

the revisions to the United States Bankruptcy Code contained in BAPCPA would alter the representation required for a debtor in Chapter 13 commensurate with the additional burdens placed upon a debtor for filing the case and confirming a Chapter 13 plan.  As a result, the dialogue concerning Chapter 13 representation and compensation was delayed while BAPCPA was implemented and both the bar and bench gained experience with the changes wrought by that statute.

Approximately one year after the effective date of BAPCPA, the Bar Group resumed its efforts with renewed vigor.  After much discussion, drafting and comment, Local Rule 9010-5 was substantially revised, deleting the provision concerning the termination of employment 90 days after confirmation of a Chapter 13 plan.  New Local Rule 9010-6 was approved requiring counsel to abide by certain requirements in new Appendix F, Chapter 13 Debtor's Counsel's Responsibilities and Fees, effective May 1, 2007.

The changes to the Local Rules make clear that an attorney who represents a debtor in Chapter 13 is required to represent the debtor in all matters in the bankruptcy case (excluding adversary proceedings) and may not demand additional fees as a  prerequisite to providing services. The court declined to set pre-approved fees or to publish a fee schedule for specific types of motions or other contested matters.  Instead, by Appendix F, the court provided three alternative fee arrangements  that would be presumed reasonable under Section 329 and presumptively approved under Section 330 without entry of an Order or requirement of application for compensation.  The fee arrangements which are presumed reasonable and presumptively approved are set forth in Appendix F, subparagraphs 4.A.- C. (these fee arrangements described in subparagraphs 4.A.-C. are collectively hereafter referred to as the "Presumptive Fees").

The Presumptive Fees are not mandatory and counsel may enter into a different fee agreement for representation of the debtor in a Chapter 13 case.  However, if the fee arrangement

entered into by and between the debtor and debtor's counsel is one of those described in subparagraphs 4.A.- C. and is in compliance with subparagraph 4.D. of Appendix F, counsel is excused from filing an application for allowance of compensation as a prerequisite to approval of the fee arrangement. Nonetheless, the presumption as to the fee is rebuttable and any party with standing may file an objection to the fee, or the court *sua sponte* may require counsel to justify the fee.[10]

The alternative set forth in subparagraph 4.C. is similar to the arrangement that preexisted Appendix F. A flat fee not to exceed $2,000.00 is presumed reasonable for representation on all matters central to plan confirmation. Counsel may apply for additional compensation for prosecuting or defending motions not central to plan confirmation and for claims objections. An application for such additional fees is required but may be made on Local Form E which streamlines that process.

The fee arrangement presumed reasonable under subparagraph 4.A. provides a higher level of presumptively reasonable fee ($3,500.00) for representation of the debtor on all matters in the bankruptcy case for work done through the period ending six months following the order of confirmation. For work done after that six month limitation, counsel may apply for additional fees. The presumed reasonable fee arrangement described by subparagraph 4.B. sets a presumptively reasonable fee not to exceed $4,500.00 for representation for all matters in the bankruptcy case for the entire duration of the case and counsel waives all opportunities to apply for additional fees for work done in the main bankruptcy case.

The Presumptive Fees diverge from past practices by more than just increasing the numeric amount of a customary fixed fee. The arrangements described by the Presumptive Fees also shift

---

[10] In effect the presumption acts as an interim approval of the fee arrangement which approval becomes final if no orders revising the approval are subsequently entered.

the source of payment as to all of the post-petition balance of such fees to distributions under the plan. As stated above, in prior times it was often the case that any additional fees charged for contested matters were asserted by counsel solely against the debtor outside of the plan. The Presumptive Fees arrangements make clear that the fees to be paid through the plan are in effect fees asserted pursuant to Section 330(a)(4)(B), allowable as administrative expenses pursuant to Section 503(b). Unlike attorneys' fees that arise solely between the debtor and counsel that the court may review pursuant to Section 329(b), where the fee is to be paid by the bankruptcy estate by distributions from the plan, such fee requires allowance by the court pursuant to Section 330(a)(4)(B).

Courts have long recognized that Chapter 13 cases may and often do require similar services of attorneys in routine cases. Flat fee arrangements therefore may be particularly appropriate for such cases. *Pineloch Enterprises, Inc*., 192 B.R. 675 (Bankr. E.D.N.C. 1996). The courts have sought reasonable procedures for efficient and cost effective approval of such fees while preserving judicial oversight as required by the Code.

For example, Rule 2016-1(C) of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia provides in part:

(5) **Fees Requested Not in Excess of $1,500.00 [For All Cases and Proceedings Filed on or After 1/1/03]**: Where the Rule 2016-1 disclosure of compensation does not exceed $1,500, the Court may award compensation in such amount or less, plus reimbursement of actual and necessary expenses, with or without a hearing, upon the following:

(a) **Notice**: The debtor's attorney shall serve a copy of the Rule 2016-1 disclosure of compensation and Chapter 13 Plan and Related Motions on the debtor and the standing trustee, along with notice that they have ten (10) business days from the meeting of creditors in which to file an objection to the fees requested in the Rule 2016-1 disclosure of compensation opposing said fees in their entirety, or in a specific amount. Counsel for the debtor may file a request for hearing with the Court and notice of same shall be served upon the debtor(s), the standing trustee, and the United States Trustee. At any such hearing, each of the parties shall have the burden of proof established in 11 U.S.C. §§ 328, 329 and 330. In the absence of notification

12

of objection by the debtor or the standing trustee, the fees will be allowed as disclosed.

(b) **Proof of Service**: With the Rule 2016-1 disclosure of compensation, the debtor's attorney shall file a proof of service evidencing proper service under subparagraph (C)(5)(a) of this Local Bankruptcy Rule.

(6) **Fees and Expenses Requested After the Filing of the Petition [For All Cases and Proceedings Filed on or After 1/1/03]**: Any fee in excess of the maximum established in the rule will require an application for allowance of compensation and reimbursement of expenses by separate and distinct pleading.  Any such application shall comply with 11 U.S.C. § 330, FRBP 2016 and the other provisions of this Local Bankruptcy Rule.  The attorney shall not send a bill directly to the debtor.  Should the debtor receive a bill from that person's attorney, the debtor should send a copy of such bill to the standing trustee.  Service and notice of the application shall be given in accordance with paragraph (C)(5) of this Local Bankruptcy Rule.

Local Bankruptcy Rule of the United States Bankruptcy Court for the Eastern District of Virginia

2016-1(C)(5)-(6)(emphasis in original).

Similarly, the United States Bankruptcy Court for the Western District of Missouri has

promulgated a Rights and Responsibilities Agreement between Chapter 13 debtors and their

attorneys (which agreement is available as a Local Form 2016-1.4 and referenced by Local Rule

2016-1(D)) and provides in part:

ALLOWANCE AND PAYMENT OF ATTORNEY'S FEES
The guidelines in this District for payment of attorneys' fees in Chapter 13 cases without a detailed fee application provide for maximum initial fees of $3,000 for legal services provided up to confirmation of the Chapter 13 Plan.  In this case, the parties agree that the fee for these preconfirmation services will be $_____, payable as follows:_____.  Such fee does/does not (circle the appropriate verb) include representation in adversary proceedings.  (If neither is circled, representation in adversary proceeding is included).  Fees for postconfirmation services are subject to court approval, based on the schedule contained in Local Rule 2016-1, or based on actual time records submitted by the attorney.

Other than the initial retainer, your attorney may not receive fees directly from you.  All other fees due shall be paid through the Chapter 13 Plan unless otherwise ordered by the Court.

Local Form of the United States Bankruptcy Court for the Western District of Missouri, 2016-1.4,

at  para V(in part).

Another example is the Chapter 13 Attorney Fee Guidelines adopted by the United States Bankruptcy Court for the District of Hawaii.  Those guidelines provide the opportunity to an attorney to have fees and expenses allowed as a part of a Chapter 13 plan confirmation without filing a separate application provided that the detailed conditions set forth in those guidelines are met.  Those conditions include a specific list of maximum amounts for services to be rendered which includes a maximum amount of $2,100.00 for "normal and customary legal services and expenses" which specifically includes responding to motions to dismiss and reviewing and objecting to claims.  In addition a list of separate services and maximum amounts are set forth. These guidelines also state:

> **Payment of Fees Through Plan**.  Except for any attorney fees and expenses paid by the debtor prior to the filing of the petition, all fees shall be paid through the plan unless the court orders otherwise.  Postpetition, the attorney may not receive fees directly from the debtor, or from another party on behalf of the debtor, unless paid into a client trust account pending court approval.  In the first distribution after the entry of the order confirming a plan and authorizing the payment of attorney fees, the trustee shall pay the attorney 50% of the funds then held by the trustee. Thereafter, the trustee shall disburse monthly to the attorney the lesser of 50% of the monthly plan payment or $350 per month of each plan payment until the fee is paid in full.  For additional fees awarded under paragraph 7, the trustee shall disburse monthly to the attorney the lesser of 50% of the monthly plan payment or $350 of each plan payment, commencing with the first distribution period after the entry of the order allowing the additional fees and expenses.

Chapter 13 Attorney Fee Guidelines of the United States Bankruptcy Court for the District of Hawaii, October 17, 2006, at para 8 (emphasis in original).

Turning to the issue before the court in the case *sub judice*, Counsel has readily moved up its flat fee to the $4,500.00 level, but rejects the limitation on the amount to be distributed monthly under a confirmed plan set forth in subparagraph 4.D. of Appendix F.  Because the distribution priority of the balance of Counsel's attorneys' fees set forth in the Plan exceeds the limitation of subparagraph 4.D., the fee arrangement creates no presumption as to reasonableness or allowance.

14

The Trustee's initial objection was simply that the payout from the Plan of Counsel's fee is at a more accelerated rate than provided for by Local Rule 9016-1 and Appendix F adopted thereunder. On the other hand, Counsel argues that the Bankruptcy Code mandates as an absolute requirement that a plan pay all administrative expenses in full, including counsel fees approved pursuant to Section 330, before any distribution may be made to priority claims described in Section 507(a)(3) through (10), distributions to secured claims, and distributions to non-priority unsecured claims, except where the holder of the allowed administrative claim agrees to a lesser treatment. This position, not surprisingly, was also argued for by the National Association of Consumer Bankruptcy Attorneys (hereinafter "Amicus") through an *amicus curiae* brief. In response, the Trustee asserts that the Bankruptcy Code does not require administrative expenses to be distributed in full before any distribution may be made on account of other claims.

As to the Trustee's assertion that a distribution in excess of that which would be permitted by subparagraph 4.D. of Appendix F, is not to be approved, the fee arrangements and limitation on distributions under Paragraph 4 of Appendix F are not exclusive and departures from such arrangements are not per se unreasonable nor prohibited. Where no presumption of reasonableness as to that fee arrangement arises, the burden is upon the debtor and counsel to demonstrate that the fee arrangement should be approved.

At the outset, Amicus argues that the confirmed Plan has determined the issue conclusively. With this argument the court must disagree. As recited previously in this Memorandum Opinion, a stipulation was entered into at the hearing that considered the Chapter 13 Plan for confirmation. It was stipulated that the question as to whether Counsel should receive payment of its fee before distribution to any other claims was reserved and the funds which would be for payment to the fee balance escrowed pending this court's determination. The plan confirmation therefore did not determine the issue.

Nor is Amicus' argument correct that the language of the model form plan set forth as Local Rule Form M is a determination by this court of the question.  The  model plan language has remained unchanged for some time.   Perhaps it should be updated in light of the recent approval of Local Rule 9016-1 and Appendix F.  Without regard to that question the following language is contained in Paragraph 2.b. of the  model Chapter 13 Plan as to distributions of counsel fees: "unless allowed for a different amount upon prior or subsequent objection."

The strongest argument advanced by Counsel and Amicus concerns the language of Section 1326(b).  This provision states: "before or at the time of payment to creditors under the plan, there shall be paid - (1) any unpaid claim of the kind specified in Section 507(a)(2) of this title."  11 U.S.C. § 1326(b)(1).  Counsel and Amicus argue that this requires that any distribution made by a Trustee must pay in full any allowed administrative claim that is outstanding at the time of the distribution, before distributing funds to any other claimant (other than possibly a domestic support obligation claimant).

Courts have differed as to whether this is the correct interpretation of the quoted language. The Trustee points to opinions including *In re Balderas*, 328 B.R. 707 (Bankr. W.D. Tex. 2005) and *In re Pappas & Rose, P.C.*, 229 B.R. 815 (W.D. Okla. 1998), to support her position that there is no requirement that administrative expense claims be paid in full before payments to other creditors commence.

In *Balderas*, the court faced the question of whether, post-confirmation, additional attorneys' fees for unanticipated services should be allowed beyond the original flat fee and the proper payment distribution priority to be allotted those additional fees once allowed.  The court noted that the allowance of a new administrative claim post-confirmation operated as "a *de facto* modification of the debtors' plan, by virtue of the requirement that any such fee awards be paid, at the very least, along with distributions to creditors out of the plan payment (causing a dilution to the

16

unexpected disadvantage of those creditors)." *Balderas*, 328 at 728. The court held that it should consider such result in deciding the distribution of such amount and acknowledged that it was applying "rough justice" in holding that post-confirmation fees would be paid out at a rate not to exceed $100 per month. *Id.* The court found that Section 1326(a)(1) was not violated by such holding because the administrative claim would be paid "at the same time as other creditors." *Id.*

In another case cited by the Trustee, *In re Pappas & Rose*, the district court was asked by an affected law firm to issue a writ of mandamus to prevent implementation of a provision contained in the bankruptcy court's Chapter 13 Guidelines pertaining to the payment of attorneys' fees. The specific provision applied to plans which provided less than a 20% payout on unsecured claims and allowed attorneys' fees in a Chapter 13 case to be paid only in equal installments over at least 24 months. The district court upheld the bankruptcy court's monthly payment plan and found that Section 1326(b)(1) required only that such payments be made concurrently with payments to other creditors. *Pappas & Rose*, 229 B.R. at 819-20.

In arguing against those cases which hold that Section 1326(b) does not require payment in full of allowed administrative claims before distributions to other claimants, Amicus states that those decisions occurred before Congress passed BAPCPA. The simple answer to this argument is that the quoted language was unchanged by BAPCPA except for renumbering the subparagraph of Section 507(a) as a consequence of changes to that section which do not impact the issue before this court. In other words, the cases occurring before BAPCPA were interpreting the same statutory provision as is in force today.

Nevertheless, there is ample support for the interpretation of Section 1326(b)(1) urged by Amicus. In *Shorb v. Bishop (In re Shorb)*, 101 B.R. 185, 187 (9th Cir. BAP 1989), the bankruptcy court had approved attorneys' fees, but had ordered that the fees be paid over a period of time to begin six months after confirmation. The BAP overruled the bankruptcy court and held that Section

17

1326(b)(1) did not permit the  nonpayment of the attorneys' fees during a time when other creditors were receiving distributions on their claims.  *Id.* at 187.

This court finds that the most persuasive of the opinions on this issue is *In re Harris*, 304 B.R. 751 (Bankr. N.D. Ill. 1986).  In *Harris*, the court was faced with an objection to confirmation by a secured creditor on the basis that the delay in distributions while attorneys' fees were being paid in full resulted in a loss of adequate protection.  *Id.* at 755.  The creditor argued not only that Section 1326(b)(1) permitted the attorneys' fees to be paid out over the life of the plan, but that such treatment was required in order to protect secured creditors from loss of adequate protection as a result of depreciation in collateral.  *Id.* at 756.  The court flatly rejected this argument and found that Section 1326(b)(1) did not require any delay in payment of attorneys' fees and in fact, absent waiver by the attorney, required payment in full of any unpaid amounts before other nonpriority creditors could be paid.  *Id.* at 757-58.

After examining Section 1326(b) and the cases which have interpreted it, this court reaches the conclusion that the statute does require the Trustee to pay in full any allowed and outstanding administrative claim as a part of any distribution, before distributions may be made to other claimants, except possibly holders of domestic support obligations entitled to priority under Section 507(a)(1).  This court agrees with the analysis provided in  *Harris*, wherein the court wrote: "Section 1326(b)(1) plainly means that at any given time after confirmation of a Chapter 13 plan, if there is any unpaid, allowed administrative expense, including any unpaid, allowed claim for attorney fees owing to a Debtor's attorney, no payment may be made to any other creditor under the plan *unless* the unpaid administrative expense is paid *in full,* either first or at the same time."  *Id.*

This does not end the inquiry in the instant case.  At the hearing upon confirmation, this court granted interim approval of the flat fee amount in its ruling upon the Amended Motion.  As set forth in the Plan, the fee allowance is subject to adjustment after confirmation.  Furthermore, as

stated in paragraph 5 of Appendix F "[n]o plan or confirmation order shall bar by res judicata or otherwise the subsequent review and potential disgorgement of the fee, upon objection or order to justify fee and notice thereof."  This provision of the Local Rules is not optional.  Because the fee of $4,500.00 is for services to be rendered throughout the entire life of the case, at any time the court may revisit approval of the fee should that be necessary.

Without regard to the gross amount of the flat fee, because the fee covers future performance of services yet to be rendered, not all of the fee is yet earned and a portion cannot even be considered as income to the attorney in any case.  *See e.g. Attorney Grievance Com'n of MD v. Lawson*, __ A.2d __, 2007 WL 2947774, *22-23 (Md. 2007).  As discussed in that case, pursuant to Maryland Rule of Professional Responsibility 1.15(c) (as contained in Maryland Rule 16-812), "[u]nless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred."  MRPR 1.15(c).  As a result, allowing immediate payment of the attorneys' flat fee before all promised services have been rendered, does not result in the attorney having more immediate access to such funds.

In addition, Section 330(a)(4)(B) provides that in a Chapter 13 case the court may allow compensation to the debtor's attorney for services which the court finds reasonable and necessary after consideration of the factors set forth elsewhere in Section 330.  Part of that determination is whether the compensation sought is reasonable in light of numerous factors including "(A) the time spent on such services; . . . . (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title. . . ."  11 U.S.C. § 330(a)(3)(in part).  It is obvious, therefore, that this court cannot determine

19

the reasonableness of a fee for work not yet performed.  The court should not inadvertently sanction payment of a flat fee that would otherwise conflict with the applicable professional rules of responsibility or other applicable provisions of the Bankruptcy Code.

Accordingly, the court holds that it must adjust its interim allowance of Counsel's  fee in light of the court's ruling herein that requires the Trustee to distribute all allowed fees in advance of distributions to other claims.  In the case before the court today, should the entire balance of the $4,500.00 fee be immediately allowed as administrative expense, the Trustee would distribute the entire remaining fee immediately.  This is because more funds have been paid by the debtor to the Trustee under the Plan than necessary to pay the full remaining balance.  As a result the first distribution by the Trustee would fully pay Counsel for the entire case.

As  recounted earlier in this opinion, in its application for attorneys' fees, Counsel has informed the court that it is likely that as many hours of services will be required to be rendered by Counsel to the debtor over the remaining life of the Plan, as were rendered to the debtor at the time of the Motion for Interim Allowance.  Giving due weight to this statement, at first blush it might appear that the court should limit its interim approval of fees to 50% of the flat fee of $4,500.00.  However, this would not recognize the efforts  that Counsel has put forth subsequent to the filing of the Motion for Interim Allowance to achieve confirmation.  After reviewing the entire docket of the case the court determines that an interim allowance of fee is appropriate in the amount of 60% of the total flat fee for the case, that is $2,700.00.  This amount is the interim allowed administrative expense.  The Trustee is required to distribute in whole the unpaid balance of this allowed administrative expense before making further distribution to other creditors.[11]

As to the remaining amount of the flat fee that is not presently allowed, the court further

---

[11]  $2,700.00 minus the initial retainer of $2,500.00 equals $200.00 to be distributed.

finds that Counsel may file further applications for interim allowance and final allowance of fee as the case progresses to its denouement.  Such interim applications may be filed not more frequently than every 120 days.[12]  Furthermore, it is appropriate that the Trustee escrow 20% of the total fee of $4,500.00 for payment of future allowed administrative expenses, including Counsel's fee.  This escrow shall be an "evergreen or refreshed escrow."[13]  The court finds it appropriate under facts of this case for the Trustee to hold such escrow pursuant to Section 105 as a means of carrying forth the congressional intent of Section 1326(b).

An order in conformity with this opinion will be entered.

---

[12]  Although Section 331 is not specifically made applicable to allowance of attorneys' fees for the debtor, it is otherwise generally applicable to attorneys' fees for professional representing the estate under all chapters and the court finds it a reasonable guideline as to the frequency of filing of applications.

[13]  For discussions of evergreen retainers, *see In re Pan American Hospital Corp.*, 312 B.R. 706, 709-10 (Bankr. S.D. Fla. 2004); *In re Insilco Technologies, Inc.*, 291 B.R. 628, 632-33 (Bankr. D. Del. 2003).

cc:    Debtor
       Debtor's Counsel
       Chapter 13 Trustee
       U.S. Trustee
       All Other Parties-In-Interest

**End of Memorandum**